**Lillian SICKLE, Administratrix of Estate of Sol Sickle, deceased.**

**Aaron RISKIN and Irving Fleischman, Surviving partners, trading as Sol Investment Company, Appellants,**

**v.**

**Saul GREEN and Minnie Green, Appellees.**

**No. 2046.**

Municipal Court of Appeals for the District of Columbia.

Argued Nov. 4, 1957.

Decided Feb. 13, 1958.

[redacted]

[redacted]

[redacted]

[redacted]

Herman Miller, Washington, D. C., for appellants.

Raymond L. Poston, Jr., Washington, D. C., for appellees.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

[redacted] Appellees, husband and wife, owners of a home on 11th Street, N.E., were desirous of purchasing a better home, and consulted Sol Sickle, senior partner of a partnership known as Sol Investment Company, which dealt in real estate matters. The partnership had been recommended to

appellees as "honest people" who would "give us a nice deal." After some negotiations, the Sickle firm prepared a so-called "exchange contract" between appellees and one Grace Murphy, an employee of the firm who acted in the transaction entirely as a straw party for the firm. By this contract appellees agreed to convey their 11th Street property to Murphy subject to first and second deeds of trust which Murphy assumed and agreed to pay. Apparently the assumption of these encumbrances was the only consideration for this conveyance. By the same contract Murphy agreed to convey to appellees certain property on Tennessee Avenue, N.E., on specified terms and conditions. Nine days after signing of the contract, settlement on the Tennessee Avenue property was made at a local title company, but it is not clear that settlement was in accord with the terms of the contract. For reasons also not clearly shown in the record, no conveyance of the 11th Street property was made by appellees to Murphy. Appellees obviously were willing to convey and apparently thought they had done so. They delivered to Sickle "the title and all the books, both books." These books evidently were the books showing payments under the first and second trusts. The firm placed on the property their sign indicating ownership of it or at least an interest in it.

Having obtained title to the Tennessee Avenue property, appellees discontinued making payments on the trusts on the 11th Street property. When the holder of the second deed of trust, which secured a promissory note executed by appellees, notified them to make payments, they in turn notified Sickle, and he told them to forget the matter and not to worry about it. Payments not being made by either appellees or the Sickle firm, foreclosure proceedings were instituted under the second deed of trust, resulting in a deficiency on the second deed of trust note of more than $1,200. The present action was brought by the holder of the note to recover that deficiency from appellees.

Appellees filed a third-party complaint against the members of the partnership [1] and Grace Murphy, alleging that the third-party defendants had agreed to assume payment of the trusts, and their failure to do so had resulted in the foreclosure and deficiency, and asking judgment against them for any amount adjudged in the main action against appellees.

At trial without a jury, the trial court found the holder of the note entitled to judgment against appellees for the deficiency, and appellees entitled to judgment against the partners for a similar amount. No judgment was awarded against Grace Murphy. The partners have appealed from the judgment against them.

■ The main question here is whether one who enters into a contract with a straw party may hold liable on that contract the persons for whom the straw acted. It is generally held that the mere use of a straw is not in and of itself fraudulent, and that one may by the open use of a straw, with no concealment or misrepresentation, avoid personal liability. The use of a straw is not uncommon in real estate transactions and one who knows he is dealing with a "dummy" must look to that person alone for relief.[2]

This, however, is not a case of one knowingly contracting with a straw. Here is a case of two people of limited education (she had finished Sixth Grade; he could

1. Sol Sickle died before the case was tried and his administratrix was substituted for him.

2. In re Childs Co., 2 Cir., 163 F.2d 379; Underwood v. Patrick, 8 Cir., 94 F. 468, certiorari denied 175 U.S. 726, 20 S.Ct. 1022, 44 L.Ed. 338; Barkhausen v. Continental Illinois Nat. Bank & Trust Co. of Chicago, 3 Ill.2d 254, 120 N.E.2d 649, certiorari denied Edwards v. Barkhausen, 348 U.S. 897, 75 S.Ct. 218, 99 L.Ed. 205; Larner-Diener Realty Co. v. Fredman, Mo., 266 S.W.2d 689; Dorsey v. Manning, 15 App.D.C. 391. See also Stearns v. Formant, D.C.Cir., 249 F.2d 527.

not even read), inexperienced in real estate matters and without legal counsel, dealing with experienced real estate men who took advantage of them.[3] It is no answer to say that appellees knew that Grace Murphy signed the contract and the partnership name did not appear thereon. Appellees knew Grace Murphy to be an employee of the partnership and clearly believed throughout the whole transaction that they were dealing with the partnership. The facts of this case will not permit the partners to hide behind their straw.

Other errors claimed relate to an attempt by the partnership to show that the contract was modified so as to relieve them of the obligation to take the 11th Street property and assume its trusts. It is not necessary to discuss these claims because the evidence of a modification amounted to no more than a statement by the partners, made after the contract was executed, that they did not want the 11th Street property. There was no evidence that appellees consented to such modification and it is more than obvious from the record that from the beginning appellees were willing to buy a new home only on condition they could be relieved of the encumbrances on the old home. Having made a contract, appellants could not accept that part which was advantageous to them and reject the part they considered disadvantageous.

Affirmed.

3. Cf. Brown v. Coates, D.C.Cir., 253 F.2d 36.